The first case of the afternoon is Gardner Denver v. National Indemnity, 414-0713. For the appellant, Mr. Gorman, Mr. Buffett, and Ms. Grimm, but only Mr. Buffett will be arguing, and for the appellee, Mr. Rabinowitz, you may proceed. Good afternoon, Your Honors. Gardner Denver respectfully submits that the Circuit Court's decision dismissing our complaint against National Indemnity and Resolute should be reversed. Because even assuming that the qualified privilege for consultants applies here, Gardner Denver has pled more than sufficient facts to support a later finding that the exception to the privilege applies and thus that the privilege did not. And specifically, we have pled sufficient facts to support a later finding that the Berkshire defendants, National Indemnity and Resolute, have acted solely in the words of the J.D. Edwards opinion, solely to further their own nest and without regard to the interests of the purported principal, National Union. Indeed, knowing full well that it would be in many respects, their conduct in many respects would be counter to the interests of National Union by causing it to breach its contractual obligations and thus subjecting it to litigation. That's the purpose or motive prong of the exception as identified in HBI. There's an independent basis for the exception, which is the means employed to achieve that objective or that motive. And we have also pled more than sufficient facts to support a later finding that they have used improper means to achieve their exclusively selfish objectives. Counsel, do you maintain that an agency relationship exists between NICO and National Union? No, we've alleged specifically to the contrary. Okay. And we've alleged to the contrary in two respects. One, unlike a normal agency relationship, Your Honor, there is no control by National Union over National Indemnity and Resolute's behavior. Unlike in a normal third-party administrator relationship where there is still some continuing accountability and the third party doesn't completely take over the principles of accounts receivable, accounts payable, in contrast to that situation, that is what has happened here. It would be as if in HBI the third-party administrator actually took over the hospital's debts and accounts receivable rather than simply administering them to the hospital. Is that a departure from what you argued at the trial court level? No, and I would respectfully submit it is throughout our complaint, and I'm happy to provide record sites to the complaint, both with regard to lack of control and also with regard to acting solely for their own benefit, and in particular to maximize the return on the premiums, the reserves that they took from National Union in exchange for this retroactive reinsurance. Thank you. And I focus on, you may have noticed I used the phrase facts with alleged facts sufficient to support a later finding. And I want to stress the narrowness of the ruling which Gardner then proceeds, which is to simply have it stay in court. If you notice a trend throughout all the cases we cited, both in Illinois and outside of Illinois, including the pro-policy cases against Berkshire, against the Berkshire defendants, they all said the same thing, that we are not deciding whether there actually is or is not an agency relationship, whether there is or isn't control, whether there is or isn't sole benefit to one or the other versus incidental, primary benefit to one or the other versus incidental. What we are deciding is that it is premature on a motion to dismiss to try and resolve those inherently factual issues of control and scope of performance and whether it's furthering the court of principle's business interests. And in particular I would, obviously we cited them in our briefs, but I would in particular stress cases like DeHart from the Illinois Supreme Court, Amigos Inn, Sherman, and this court's own decision in Juratic. And I stress that decision not just for the generic standard about accepting all factual allegations as true and drawing all inferences for the plaintiff on a motion to dismiss, but I reference Juratic in particular because the context there was actually not too dissimilar, I would indeed argue similar, affirmatively similar to the one here in that in reversing the circuit court's dismissal order in that case, what was at issue was, like here, a qualified immunity or a limited immunity. Instead of for consultants there it was for first responders or EMTs responding to the scene of an accident. And the statute there, sometimes called Good Samaritan statutes, what it shielded or what it immunized was ordinary negligence, liability for ordinary negligence. And thus, like here, there were exceptions. There the exception was if you could plead facts sufficient to support a later finding of wanton conduct as opposed to ordinary negligence. And like here, the defendant argued that the allegations were conclusory. Indeed, they noted that a lot of the same allegations that were used, that were argued by the plaintiff to support a later finding of wantonness, were the same allegations that the plaintiff had used to support its claims of negligence. And the court still reversed the dismissal order, noting that when the merits of a case depend on the facts, that summary judgment motions are the way to deal with that. And even though Illinois is a fact pleading state, not a notice pleading state, it still held that. And it said when, particularly when the facts are predominantly in the knowledge of the defendant, as they are here, the plaintiff should be afforded an opportunity for discovery. And we believe that we will ultimately prove our allegations, but that's a fight for a later day. All we're asking right now is to have our day in court and be able to develop a record. Now, I want to talk a minute about the benefit, the sole benefit issue, because reading Berkshire's briefs both below and here, I think one could get the impression that if there is any benefit at all, even incidental benefit to the purported principle, that that's enough to eliminate the exception to the privilege and to put the privilege back into play and immunize the defendant. And that is not the case. By definition, anytime a third party is able to induce a contracting party to breach its contract with the other contracting party, they're able to do so because there is some perceived or actual benefit, however small, to the contracting party who is breaching. So it cannot be the rule that if there is any benefit, no matter how incidental or how minor to the purported principle, that that vitiates or that reinstates the privilege and eliminates the exception. Otherwise, there would never be an exception to the privilege as identified by the Supreme Court in HBI. Rather, the focus on what is the defendant's motivation, what is driving their behavior? And there's not really disagreement that it's really more about a motivation than an effect. And specifically, the circuit court noted that on page 6 of its opinion. And the Berkshire defendants note that on page 12 of their appellee brief. And cases like Middleman from the Illinois Supreme Court say you're acting in your own interest without regard to the best interests of the principle. And then similarly with means, the behavior, the conduct, it doesn't have to be criminal or sort of a mens rea type of intent against the plaintiff. It is enough that it is improper or unfair or deceptive. And I would respectfully submit, as I noted at the outset, that we have alleged very detailed facts for both of those two prompts. We did not come in and have a four page complaint that said the Berkshire defendants acted solely for their own benefit. And they used improper means to achieve that goal. We gave very specific examples in a 30 plus page complaint. Let's start with the motive benefit issue. We note, we allege specifically that Berkshire's conduct was designed for one purpose and one purpose only. And that is to maximize the return on their investment of the reserves, of the exceeding insurance reserves that they take over lock, stock, and barrel. Not one benefit, we've alleged that not one dollar of that reserve return, if you will, or float as it sometimes is called, goes to National Union. This is, as I said, a complete takeover of the accounts receivable or accounts payable, if you will, in the HPI example. And then they invest that money and all the return that they can achieve by slow pay and no pay goes to them. We quoted, far from being conclusory allegations, we quoted the few Berkshire documents that we've been able to get so far, because they're publicly available, like annual reports to shareholders. We quoted the chairman of the parent company of these two Berkshire defendants talking about how this model is designed for their benefit, not anybody else's. On the means side, the conduct side, we've alleged, again, not just conclusively, they've used improper means. We gave specific examples of that, including but not limited to the fact that they use arbitrary payment caps that are divorced from the merits of the insurance claims that are submitted in order to maximize this return on reserves. That they tie their employees' compensation to meeting those caps so that the frontline claims reps, and again, we don't have the claims handling manuals yet. That's something we would ask for and presumably get in discovery. This goes back to the point about motions dismissed versus motions for summary judgment. But upon information and belief, they have employee compensation tied to meeting these claim handling guidelines, these arbitrary caps that are designed to maximize the float so that the frontline claims rep, the people that are dealing with the likes of Gardner Denver day to day in the trenches, are incentivized to do the wrong thing instead of to do the right thing. Now, to be sure, we don't have a complaint that reads like a summary judgment brief, replete with cites to numerous documents. I mentioned a few that we do have with the quotations that I mentioned. But we're not required to have that at this stage, even under fact pleading. And that's what cases like the First District opinion in Sherman said, where it said that to require the plaintiff, without the benefit of any discovery, to have enough allegations in its complaint that you can resolve all these issues about whose benefit are they really trying to further, who has the right to control who. To require that to be all determinable from the face of the complaint is both unrealistic and unnecessary. Now, as this court noted in Uritage, that's particularly true, again, when the facts are predominantly in the defendant's possession. It was an interesting moment in the argument before the circuit court. The Berkshire defendants noted that we don't know a lot of facts. We don't know, for example, if National Union, who lost its motion to dismiss below, is ultimately subjected to extra contractual damages for bad faith under Section 155, for example, of the Illinois Insurance Code, how that gets treated. Is that outside the scope of the reinsurance arrangement, such that National Union pays it out of its own pocket to its detriment? Even if Berkshire does pay it, the Berkshire defendants do pay it, does that erode the reinsurance limit? If it does, how does that compare to the alleged savings that Berkshire argued it's achieving by slow paying and no paying, which it says is how it's benefiting National Union? But if I can stress this theme again, that's the point. We don't know the answers to these things. These are the kinds of things that discovery would get into. And they're inherently factual in nature, in terms of what applies to the reinsurance, who pays what, even if somebody, like I said, Berkshire does pay it, how does that get counted against the reinsurance? How does that compare to any alleged savings that they're achieving through their new model, which we again allege is really designed to benefit them, even if it does have some incidental benefit to National Union? How does that incidental benefit to National Union compare to the detriment to National Union caused by it breaching its contracts and being subjected to all this litigation? After, by the way, I would add 10 years of peace under a settlement agreement. This is not a case like many of those cited by Berkshire, I believe all of them, where the National Indemnity Resolution came in and basically took over an ongoing coverage litigation from the senior insurer. This is a case that's set forth in our brief. We had a litigation in 2001 in the Southern District of Illinois. It settled in 2003. For 10 years, the parties lived under that settlement agreement. It was only after National Union entered into this arrangement with the Berkshire defendants that everything started to go off the rails. And now we've had two years of litigation and more to come. So again, I guess I would say, before I get to my concluding part of my opening remarks, that I think and I appreciate the circuit courts wrestling with this issue. This is not the most clear area of the law, as you've probably been able to tell. There are cases going both ways, both with respect to Berkshire specifically and with respect to the issue more generally. The Supreme Court itself came out one way in favor of the defendant in HBI, came out the other way in Middleman, and affirmed the appellate court's reversal of a circuit court dismissal order. And by the way, the Supreme Court in Middleman did note that sometimes the purpose or motive prong and the means prong can intersect. And I submit that that's true here. Because Berkshire gets all of the return on the investment of the reserves, that also is why they do what they do in terms of improper means, the payment caps, the time employee compensation, and also resurrecting coverage defenses that were long ago settled in the form of the settlement agreement. And I'm referring to their arguments under their indemnity agreements. Now, I want to be clear. I'm not suggesting that that has yet been ruled to be a frivolous defense, but they move for dismissal, National Union did, on the basis as a matter of law that it was not frivolous and that there could never be bad faith. And as to National Union, the circuit court denied that motion. So the point is if it's a factual issue there on the National Union side, it's a factual issue here. And I think I appreciate, again, the district court wrestling with these cases, which, as I mentioned, seem to run the gamut. I think that the circuit court took on a burden that it didn't need to take on, and that is to try and resolve all these inherently factual issues now at the initial pleading stage. And it did that in two respects. One, it focused, I would respectfully submit, too much, virtually almost exclusively, on the fact of the existence of the reinsurance contract between the Berkshire defendants and National Union, instead of the behavior under that contract and performance of that contract. And then secondly, it actually talked about what was or wasn't in the scope of that relationship, without seeing any of the documents, including the contract itself, said that the Berkshire defendants' behavior, however bad we may say it is, is within the scope of their consulting arrangement with National Union. That's precisely the type of agency-related issue that Sherman says is inherently a fact question that cannot be resolved at the motion-to-dismiss stage. And I understand Berkshire's argument that their argument is not limited to agency, but at the end of the day, even their qualified privilege or consultant privilege argument asks fundamentally the same questions, which is, are they acting in fervorance of the purported principles of business interests that is National Union's? And we've alleged that they're not, and that they're solely motivated by their own gain. So I guess in conclusion for this part, I would say, again, if there's a theme running through the cases, it's not that you have to agree with us today that we're right. Obviously, we believe we will prove our factual allegations. We're simply saying that it was premature to try and resolve that now at the motion, at the initial stage, given the high bar that that creates for a defendant. And indeed, I would note in that regard, in the Ashland case, which is the only case cited by either side that involved the disruption of a long-existing agreement settlement with National Union like we have here, the circuit court said it's hard for me to see how I get to a result that says even if I take every one of your allegations as true, that you still don't get into court. So I'll stop there and say if it's okay with the court, I think I have more than, I think I have a few minutes left if I could add that to the five minutes of rebuttal. We don't do it that way. Oh, okay. Then I'll stick with the five minutes. Thank you, Judge. May it please the court. Good afternoon, Your Honors. Mark Rabinowitz on behalf of the Applebee's National Indemnity Company and Resolute Management Inc. I'd like to start, if I may, by reviewing foundation for this case. And that is everything that Gardner-Denver's counsel has said has the predicate that the coverage position that was taken by National Indemnity Company and Resolute was in bad faith, was a breach of its duties. There clearly is, in their view, no liability whatsoever under the indemnity agreements that Gardner-Denver is seeking to enforce because the settlement agreement from 2003 clearly covered and waived and released those claims. Very briefly, Your Honors, in this document is an exhibit to the complaint. It is in the appellate record. The settlement agreement and release, which is at least a dozen pages, maybe 20. It's 15 pages. Specifically says, and I quote, Whereas the parties wish to fully and forever resolve all actual or potential controversies, disputes, or claims between them, including but not limited to those claims set forth in the declaratory action, relating to any and all past, present, or future liability or obligations of National Union to investigate, to defend, to pay defense costs, to indemnify, or provide any insurance coverage whatsoever to New Gardner relating to the underlying claims under the National Union policies. It then goes on and Gardner-Denver releases National Union from any duty under the policies. There is a paragraph that says, Parties reserve and do not release any claims that are not involved in the settlement agreement. This is a unilateral release. It does not mention the indemnity agreements. National Union did not release any claims under the indemnity agreements. So the position that National Union is taking now, which is, wait a minute, there's an independent indemnity agreement that requires Gardner-Denver to pay us money, was not even mentioned in this document, was not released. The release is unilateral, it's narrow, and it expressly says all claims that are not released are reserved. So Gardner-Denver's entire case is based on the false premise that this settlement agreement releases National Union's claims under the indemnity agreements. So they have gone and they have sued, and they've sued National Union for breach of the settlement agreement. They've also sued National Indemnity Company and Resolute, the third-party claims handlers, claiming that they've tortiously interfered with their insurance policy with National Union. What have they alleged? They've alleged nothing but conclusions. They've alleged that National Indemnity and Resolute are acting solely for their own gain. What do they allege in the way of actual facts? They say, well, what are they complaining about? They're complaining about the fact that National Union and Resolute have made a claim under the indemnity agreements. And they claim, well, they are motivated by the existence of the reinsurance relationship and arrangement to delay and deny policyholder claims. They claim that they fully admit that National Indemnity and Resolute are acting pursuant to the reinsurance agreement and the claims handling agreement. They're acting pursuant to contract. They don't dispute that. They dispute whether they are technically agents. But under the HPI line of cases, it's not necessary for a representative of a principal to be technically an agent in order to enjoy the benefit of a qualified privilege. Now, that qualified privilege, the HPI is an Illinois Supreme Court case, and there are many progeny of that doctrine. It holds that where a party is acting in a representative capacity, I don't think the word agency appears anywhere, the hospital management company, where a company, an entity is acting in a representative capacity, pursuant to contract, and exercises business judgment on behalf of its principal, it enjoys a qualified privilege against tortious interference claims. It cannot be held responsible for tortiously interfering with its principal's contract. And the reason for that is you'd have litigation left and right. Every time that there's an alleged breach of contract, you'd also sue the claims handler or the third party representative. There is an exception to the privilege, as counsel for Governor Denver noted. In circumstances where it can be shown that the agent or representative was acting solely, not in part, but solely in its own interest, and in a manner that's inconsistent with antagonistic to, is the language that's used in the cases, the interests of the principal, there could be tortious interference liability by the agent or representative. And they are attempting to steer into to invoke that exception to the privilege. And what do they allege? They allege that the conclusion, nothing but the conclusion, that National Indemnity Company and Resolute are acting solely to maximize their own return. Haven't they alleged that NICO's defense was frivolous? Exactly, Your Honor. Has the trial court resolved that? No, the trial court did not resolve that. The point, first of all, as I said at the very outset, it certainly can't be frivolous because the contract on its face specifically does not release the claim. But the basis of the Let me be clear. To resolve that it's not frivolous, isn't that a ruling on the merits? And doesn't that mean that the court, that they should proceed, a 2615 motion should be denied and the court should be called upon to decide this case on the merits, not on a motion to dismiss? That was not the basis of the court's ruling, Your Honor. The basis of the court's ruling was that the conduct was privileged. Even if the position taken was erroneous, the basis of the court's ruling here was that Well, leaving that aside for the moment, because I just want to, this is a de novo review of what's in the complaint. If they allege that your defense was frivolous and you cite this document as showing, see, it's not frivolous and it's in good faith and here are all the reasons why, doesn't that call for a judgment and a determination on the merits of that resolution? It would, Your Honor. And the court, on the motion to dismiss that we filed on behalf of National Union, the court said I'm not going to resolve that issue. I'm going to deny your motion to dismiss because I think there's a fact issue here. And so the court denied the motion to dismiss as to whether the settlement agreement on its face refuted the allegations of the complaint. That was one of the motions we made and the court denied that. The court said exactly what Your Honor is pointing out, which is that there's a way to maybe read this once we find out what happened that would say that the claim under the indemnity agreement was released. The circuit court did not dismiss the complaint as to those allegations. They merely dismissed the tortious interference count and the consumer fraud count. The tortious interference count on the basis that there was a qualified privilege that was evident on the face of the complaint because National Indemnity and Resolute were acting within the scope of their authority pursuant to their claims handling agreement. There's a very key point here, Your Honors, which is, and counsel reiterated it. In their brief on page 10, they specifically admit that apart from all of the conclusory allegations in their complaint, that they specifically say that they do not know whether the payment criteria caps used by the Berkshire defendants include any analysis of potential financial harm to the National Union, whether and the extent to which the Berkshire defendants give notice to and get input from National Union before committing National Union to a position that is likely to result in additional litigation and additional potential damages, and how exactly the costs of additional coverage litigation and additional damages against National Union, including extra contractual damages, are treated as between National Union and the Berkshire defendants. So they've alleged that National Indemnity and Resolute are acting contrary to National Union's interest, but one thing they have not alleged is that National Union has ever objected or complained about the coverage positions they've taken. That allegation is conspicuously absent from their complaint. If the principal that National Indemnity and Resolute was representing, in fact, believed that the positions that were being taken were improper, you better believe it. National Union would have objected. So we have the principal not objecting, going along with the coverage determinations, and this is the key to the whole thing, Your Honors, and this is one of the bases on which Judge Ortbal dismissed the tortious interference count, and that is that the denial or delay of the payment of claims by policyholders not only benefits National Union and Resolute, but also benefits, I'm sorry, National Indemnity and Resolute, but also benefits the insurer, National Union. Insurance companies, every insurance company, invests its premiums and pays out its claims later, and the extent to which they pay them in a smaller amount and at a later date benefits the insurance company. That's how insurance companies work. That difference is called a float. Every insurance company does that. There's nothing improper about it, but the key point here is the conduct of which Governor Denver is complaining is perfectly consistent with the financial interests of National Union. There is nothing inconsistent. There is no conceivable scenario here, and that's the key. Are they entitled to take discovery? No, they haven't stated a claim. Why haven't they stated a claim? Because on the face of the complaint, it doesn't state a claim because what they have alleged, which is only that National Indemnity and Resolute have delayed and denied the payment of claims, that benefits National Union, the principal, to the same extent. There's no factual allegation whatsoever, Your Honors, that there's conduct that occurred that is inconsistent with the interests of National Union. Everybody benefits by saving money by paying less or by paying later. We all do. We pay later. We conceivably gain interest. All companies, Governor Denver, the extent to which they pay their bills later, they've gotten interest in the meantime. If an agency relationship exists, the plaintiff would bear the burden of pleading that the defendant's conduct lacked justification or was done with malice? Yes. And the plaintiff's claim, they did that. Correct. And where did they fail in your judgment to do that? They failed, Your Honor, in failing to allege any facts whatsoever to support their invocation of the exception that they're seeking to invoke to the qualified privilege that says that even though you're acting pursuant to contract, you are acting solely for your own gain and in a manner that is antagonistic to, inconsistent with, the interests of, in this case, National Union. Their allegations do not rise to that level. Even the conclusions they've alleged, every single one of them amounts to a delay or a denial of their claim, which not only benefits National Indemnity and Resolute, it benefits National Union. Their money wasn't paid out. Their reinsurance covered wasn't eroded quicker or in a larger amount. That's the point. We are entitled to a qualified privilege here. The exception doesn't apply unless they allege facts that invoke that privilege. No factual allegations that they were acting solely for their own gain and contrary to National Union's interests. National Union has never complained. There's no allegation of that. So I would respectfully suggest, Your Honors, that they're not entitled to a day in court. They're not entitled to discovery. It's putting the cart before the horse. Until such time as they've stated a claim, they don't get discovery. You can't go out and make a conclusory allegation and then say, Even though I admittedly don't know any of these details, just because it's pled the conclusion, I'm entitled to take discovery. Your Honors, there is a legion of cases that establish and apply the qualified privilege beginning with the HPI case. The Garner-Demmer has indicated that it's unreasonable for the appellees to demand that they have answers to the specific questions of what actually was done here without their first taking discovery. However, they are required to state their claim before they can go out and take discovery. At the most, what they're alleging here is that National Indemnity and Resolute are acting in part for their own gain. So if the delay and the denial of the claim, as they've alleged, benefits National Indemnity to the extent that it also benefits National Union, which it would categorically, they have not met the burden of establishing that National Indemnity and Resolute were acting solely for their own gain. Every agent, and it's explained in the Mintz case out of California, every agent is always acting in part for its own gain. That's why it's an agent for profit, but it's also benefiting its principal at the same time. And that's the basis of the representative and agency business. But what about the position that you're taking that they have to pay out under the indemnity agreements that you say were not part of the settlement agreement? What about? How does that impact the analysis as to whether or not it's to their benefit? You're saying it's to their benefit, but that's money they would have to pay out according to the position you're taking, correct? That who would have to pay out? That Gardner-Denver would have to pay out pursuant to the indemnity agreement. I'm saying it's to National Union's benefit as well as National Indemnity and Resolute. If Gardner-Denver has to pay under the indemnity agreements, that money is not paid to National Indemnity. That money is paid to National Union because the indemnity agreement is between National Union and Gardner-Denver. So if Gardner-Denver owes money back to National Union, that absolutely benefits National Union directly. I don't know if there's any benefit at all to National Indemnity and Resolute. The point is, the coverage position they've taken, as Your Honor has just pointed out, that would be a direct benefit to National Union. The coverage position they've taken does not in any way harm. It's not inconsistent with the financial interests of National Union. It's consistent with it. To the extent that National Union, the underlying insurer who was reinsured by National Indemnity and then Resolute, the claim teller, to the extent that less money is paid out on Gardner-Denver's claims or is paid out later, then that is a reinsurance cover that National Indemnity provided to National Union erodes slower, and the insurer and its reinsurer paid out less money. Gardner-Denver suffers, but it certainly doesn't rise to the level of an exception to the privilege. Under these circumstances, National Indemnity Company is entitled, as is Resolute, to the benefit of the qualified privilege under the HPI line of cases, such that they can't be liable for tortious interference. If Gardner-Denver's right, if it turns out that they are not liable under the indemnity agreements, if it turns out that they are, that the settlement agreement did release those claims, well then who do they have a claim against? They have a claim against National Union under the policies. Their insurance policy is with National Union. They are not in privity of contract with National Indemnity or Resolute. National Indemnity and Resolute are third parties that have a claims handling arrangement with National Union. The policies are strictly between National Union as insurer and Gardner-Denver as policyholder. I would suggest, Your Honor, that the same circumstances that entitle National Union and Resolute to the benefit of the qualified privilege also negate any claim under the Illinois Consumer Fraud Act. Gardner-Denver's claim in the first instance is preempted by Section 155 of the Illinois Insurance Code as the trial court held. In addition, they have not established an independent claim, independent tort, that would permit them to proceed under the Consumer Fraud Act. All they've really alleged is a claim for breach of contract, for alleged breach of the insurance policy. So under those circumstances, the Consumer Fraud Act does not permit an independent claim when there's a breach of contract claim. Do I understand then, under your view of what is occurring, that if you prevail, Gardner still may have some recovery, possibly against National Union, and that's between them? It doesn't have anything to do with you? Absolutely, Your Honor. Yes. I apologize if that wasn't clear. So the case remains pending. There are several counts by Gardner-Denver against National Union. We move to dismiss those. Judge Ortbal denied the motion to dismiss, except for the Consumer Fraud Count. So I believe there's a declaratory judgment count pending by Gardner-Denver against National Union. It's insurer. There is a breach of contract count pending by Gardner-Denver against National Union. It's insurer for breach of the settlement agreement. So absolutely, the case is still pending. All that was dismissed by Judge Ortbal on June 6th of last year were the independent claims against National Indemnity Company, the reinsurer of National Union, and Resolute, the third-party administrator of Claims Handler. So absolutely, the case in its full extent remains pending against National Union, which is really the only party that should be liable here. It's merely these creative, tortious interference in Consumer Fraud Counts that were dismissed by Judge Ortbal. Thank you, counsel. Thank you very much, Your Honors. Goodball? Thank you, Your Honors. I'll start by addressing where Mr. Rabinowitz concluded. Because Judge Posner, on behalf of the Seventh Circuit, noted in J.D. Edwards that it is a bit of a mysterious tort. I think he called in his opinion that you have both a breach of contract claim against the breaching contract party and also a tortious interference claim against the third party that induced the breach. But he noted that that is the law. Both remedies are provided by the law, and that wasn't the issue before the court. And so on behalf of the Seventh Circuit, he wrote an opinion that affirmed the jury verdict against the tortious interference defendant in that case. And I also want to – I was struck by opposing counsel's comment that if National Union had a problem with anything Nyko and Resolute were doing, you better believe they would object. Well, I would submit to you that's precisely the kind of factual issue that we can't resolve at the motion-to-dismiss stage. We don't just believe what will happen – what happens or would happen factually. We look at the record evidence. And that's exactly what Sherman and Iritich say you can't just assume on a motion to dismiss. He – Mr. Rabinowitz also talked a lot about conclusive allegations. I will just refer the court again to – we knew that that was their theme, and so we tried to lay out in detail in bullet form in the opening brief, pages 4 to 7, and then in a chart form on pages 6 and 7 of the reply brief, exactly what those detailed factual allegations are about the return on the premium insurance reserves going exclusively to them, the payment caps that I refer to, the employee compensation incentives that I refer to, the raising of the indemnity agreements after 10 years of peace, which is still a live factual issue as noted. It cannot be resolved and was not resolved at the motion-to-dismiss stage. So the raising of the indemnification issue, opposing counsel says, that cannot serve as a basis for lack of justification because you're not in privity. Do you agree? No, I mean, I think that goes to the means prong as opposed to the purpose prong of the exception, right, that HPI identified. Basically said, look, there's one of several ways the exception can come into play, and sometimes they'll overlap, but one is where the third party is acting solely for its own benefit, without regard to, without caring whether it's benefiting the principal. The other way is by using improper means to achieve its – or to carry out its duties. That is a lack of good faith business judgment on behalf of, and that's the phrasing of the J.D. Edwards Court, I believe. And so even the phrasing of that prong of the exception uses the word good faith as the antithesis of bad faith. And so while it may be true that vis-a-vis national union, that's a traditional insurance bad faith issue, vis-a-vis these third parties, precisely because they're not our insurer, they're interlopers in the contractual relationship, is why it provides that separate and independent prong of the exception. And so I would – so I refer you to those pages of the briefs. Mr. Rabinowitz also noted on page 10 of our reply brief all the factual questions we said we don't know the answers to. Precisely, we note that that's what discovery would reveal. And again, under URTIC, they know the facts. They don't get to stand behind a motion and dismiss and say even though you've alleged that we get all the return on the investment and even though you've alleged we have these arbitrary payment caps and incentivize our employees to meet them instead of what the claims really call for, you don't get to see anything else that we know about in terms of how the reinsurance limits work and who pays what. That's exactly what URTIC says you can't do. And I guess I would close by noting that this case does not, because of this unique arrangement that National General Resolute have with the National Union and the way in which they've implemented it, this case does not implicate the public policy concern or the public policy that underlies the privilege, which as the Seventh Circuit noted in J.D. Edwards, is the notion that if you could subject these consultants to liability, which it would cast a quote dark cloud over the consulting business, if decisions that turned out in hindsight to be, if you could hold them liable for decisions that in hindsight turned out to be ill-informed or negligent. To be sure, we don't want to do that, but we also don't want to incentivize the type of behavior that we've alleged here in detail. And so to sum up, Your Honors, we're simply asking to have our day in court. In that charter that I mentioned, the reply brief, on the left side you have our detailed factual allegations and you have what Berkshire, what National Indemnity and Resolute have said in opposition. And we say they're acting for their own benefit with any benefit to National Union being incidental. They say no, we're acting primarily for National Union's benefit with any benefit to us being incidental. And those are right side by side, and that's exactly the kind of thing that a motion to dismiss was not meant to resolve. Thank you very much. Thank you, Your Honor. Goodbye.